IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| RONNIE G. JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:16-CV-774-KPJ |
| | § | |
| CITY OF SHERMAN, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant City of Sherman, Texas' ("the "City") Motion to Disqualify Plaintiff's Attorneys (the "Motion") (Dkt. 104). Having reviewed the Motion and the relevant pleadings, the Court finds the Motion (Dkt. 104) should be **DENIED**.

I. **BACKGROUND**

Plaintiff Ronnie G. Jackson ("Plaintiff") sued the City alleging that his employment with the City was terminated and he was denied reasonable accommodation in violation of 42 U.S.C. § 12101, *et seq.*, the Americans with Disabilities Act of 1990, as amended (the "ADA"). *See* Dkt. 24. The ADA prohibits workplace discrimination on the basis of a disability. Plaintiff also alleges Defendant violated Section 451.001 of the Texas Labor Code, which prohibits retaliation for filing a workers' compensation claim and asserts a claim for "vicarious liability." *See* Dkt. 24.

According to Plaintiff, he was employed by the City for over nine years. Plaintiff injured his right knee on or about July 11, 2014, while performing his duties as a Lead Mechanic. *Id.* at ¶ 6-7. Plaintiff reported his injury and filed a workers' compensation claim with the Division of Workers' Compensation of the Texas Department of Insurance. *Id.* at ¶ 6-7. He alleges he was discharged on or about September 2, 2015, effective September 30, 2015, and at the time of his

discharge, he was assigned to the position of "Data Entry in the RTA system." *Id.* at ¶ 5. On October 23, 2017, the Court granted dismissal of Plaintiff's workers' compensation claim and denied summary judgment of Plaintiff's ADA claim. *See* Dkt. 81. Accordingly, Plaintiff's ADA claim is ready to proceed to trial, which is scheduled to begin on February 5, 2018.

Ronald R. Huff and the Richardson Law Firm (collectively, "Plaintiff's Attorneys") represent Plaintiff in this action. Plaintiff's Attorneys also represent Wayne Blackwell ("Blackwell"), an employee of the City and its former Human Resources Director,[1] in a separate and unrelated legal action. *See* Dkt. 104-6. The Motion asserts that Plaintiff's Attorneys also represent parties adverse to the City in four other pending lawsuits. *See* Dkt. 104 at 2. According to the Motion, Blackwell was directly involved with the subject matter of this case during his time as the City's Human Resources Director. *Id.*

The issue of Plaintiff's Attorneys' representation of Blackwell first came to the attention of the Court in the City's opposition to Plaintiff's motion seeking to depose Blackwell after the close of discovery in this case. *See* Dkts. 42; 43. According to Plaintiff, Jim Cross ("Cross"), then assistant director of public works for the City, and Clay Barnett ("Barnett"), then director of public works and engineer for the City, made the decision to discharge Plaintiff. *See* Dkt. 52 at 2. Plaintiff alleges that Blackwell's involvement in the decision to discharge Jackson was limited to Blackwell's preparation of a letter dated April 6, 2015 (the "April 2015 Letter") stating a job offer consistent with Plaintiff's physical restrictions. *Id.* The nature of that job offer is in dispute. Plaintiff sought to depose Blackwell to elicit testimony regarding the preparation of the April 2015 Letter, any meetings Blackwell may have had with Cross and/or Barnett regarding the preparation

---

[1] As of January 30, 2017, Blackwell was reassigned to a different position within the Human Resources Department and served in that role until being placed on administrative leave in October 2017. *See* Dkt. 104 at 2.

2

of the April 2015 Letter, and whether or not the job offer articulated therein was temporary. *Id*. at 2-3.

The Court held a hearing on August 16, 2017, and thereafter ordered the parties to submit expedited briefing regarding the City's allegation that Plaintiff's Attorneys' representation of both Jackson and Blackwell raised a conflict of interest issue. After extensive briefing, as well as oral argument (*see* Dkts. 48; 50; 52; 53; 86; 87), the Court concluded the City failed to make a convincing argument that a conflict of interest existed simply by Plaintiff's Attorneys deposing Blackwell in his capacity as the City's employee while simultaneously representing Blackwell in a completely separate litigation. *See generally* Dkt. 54. Plaintiff's Attorneys were thus permitted to depose Blackwell. The City now re-urges the conflict of interest issue in the present Motion, wherein it seeks to disqualify Plaintiff's Attorneys from representing Plaintiff in this lawsuit.

## II. LEGAL STANDARD

The Fifth Circuit has "made clear that 'disqualification cases are governed by state and national ethical standards adopted by the court.'" *FDIC v .U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995) (quoting *In re Am. Airlines, Inc.*, 972 F.3d 605, 610 (5th Cir. 1992)). In the Fifth Circuit, when considering disqualification of an attorney, district courts generally rely upon the following: (1) the local rules in the district; (2) the American Bar Association's ("ABA") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001); *Ayus v. Total Renal Care, Inc.*, 48 F. Supp. 2d 714, 714 (S.D. Tex. 1999). Beyond the various rules and codes identified above, "[a] court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen

counsel." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973)).

In the Eastern District of Texas, "the standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court." LOCAL R. AT-2. In Texas, disqualification is a "severe remedy." *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989). Motions to disqualify are subject to an exacting standard both to protect a party's right to counsel of choice as well as to discourage the use of such motions as a "dilatory trial tactic." *Id*.

### III. ANALYSIS

The City argues that Plaintiff's Attorneys should be disqualified because: (1) they engaged in improper *ex parte* communications with Blackwell in violation of the "No Contact Rule;" (2) their representation of both Jackson and Blackwell creates an appearance of impropriety; and (3) their continued representation of Jackson will severely prejudice the City and call into question the fair and efficient administration of justice and will threaten faith in the legal system. *See id*. at 1-2.

#### A. *EX PARTE* COMMUNICATIONS

The City argues that Plaintiff's Attorneys violated the "No Contact Rule" under Texas Disciplinary Rule of Professional Conduct 4.02 and ABA Model Rule 4.2, by communicating with Blackwell about the subject matter of this case without the consent or knowledge of City Attorney or the City's outside counsel. *See* Dkt. 104 at 5. Plaintiff maintains there has been no *ex parte* communication between Plaintiff's Attorneys and Blackwell in relation to the present case, and Plaintiff's Attorneys' only contact with Blackwell, other than by way of deposition, took place in the context of their representation of Blackwell in his own case against the City.

4

The City asserts that because Blackwell's position as the City's Human Resources Director was a managerial position, his acts and omissions in connection with this matter may be imputed to the City for civil liability. *See* Dkt. 104 at 7. Specifically, the City points to Plaintiff's reliance on the April 2015 Letter as evidence that the City—through Blackwell's actions as the City's Human Resources Director—offered Plaintiff a modified duty position and thus Blackwell is a person "whose act or omission in connection with the matter may be imputed" to the City. *Id*. Plaintiff's response (Dkt. 105) does not directly rebut the City's argument regarding Blackwell's status as a managerial employee of the City. However, as explained further below, regardless of Blackwell's status as a managerial employee, the communications about which the City complains do not violate the No Contact Rule.

The City asserts that Plaintiff's Attorneys communicated with Blackwell as evidenced by: (1) ) emails forwarded by Blackwell to Plaintiff's Attorneys; (2) Blackwell's destruction of City documents and emails; and (3) an email forwarded by Blackwell to his personal email account regarding the subject matter of another employment lawsuit. *See* Dkt. 104. Plaintiff argues the City has not shown that any discussions between Plaintiff's Attorneys and Blackwell actually involved the subject matter of the present lawsuit as required by the professional rules of conduct; nor has the City shown that any confidential information was sent to Plaintiff's Attorneys by Blackwell. *See* Dkt. 105 at 4-5.

The No Contact Rule prevents attorneys litigating a suit from contacting a person or organization that the lawyer knows is represented about the subject matter of the representation. *See* TEX. DISCIPLINARY R. OF PROF'L CONDUCT R. 4.02(a); MODEL RULES OF PROF'L CONDUCT r. 4.2. Texas Rule of Professional Conduct 4.02 states that while a lawyer is representing a client, "a lawyer shall not communicate . . . with a person, organization or entity of government the lawyer

knows to be represented by another lawyer regarding the subject." TEX. DISCIPLINARY R. OF PROF'L CONDUCT R. 4.02(a). "This prohibition extends to certain 'persons *presently* having managerial responsibility' in the organization [that relates to the subject of the representation] or 'presently employed by' the organization" and can make the organization liable for the matter at issue. *In re RSR Corp.*, 473 S.W.3d 775, 781 (Tex. 2015) (emphasis in original) (quoting TEX. DISCIPLINARY R. OF PROF'L CONDUCT R, 4.02(a)).[2] However, a lawyer is allowed to contact "a person presently employed by [an organization or entity of a government] whose conduct is not a matter at issue but who might possess knowledge concerning the matter at issue." TEX. DISCIPLINARY R. OF PROF'L CONDUCT R. 4.02(a) cmt 4.

The Court finds the City has not shown that any communication took place regarding the subject matter of the suit and will address in turn each piece of evidence the City suggests proves Plaintiff's Attorneys have improperly communicated with Blackwell.

First, the City points to Blackwell's deposition (Dkt. 104-2, "Blackwell Depo." at 11:13-14:8) as evidence of Blackwell's admission that he spoke with Plaintiff's Attorneys about the subject matter of this case. *See* Dkt. 104 at 3. Blackwell testified that: (1) he had no communications with Plaintiff's Attorneys prior to his engagement of them as counsel in his own case against the City (Dkt. 104-2, Blackwell Depo. at 11:18-24); (2) he did not have any material information about Plaintiff's case in his personal possession (Id. at 9:22-10:3); (3) he had spoken to Plaintiff's Attorneys "less than a handful" of times about Plaintiff's case (*Id*. at 13:6); (4) the subject of Plaintiff's case came up most recently when Blackwell called Plaintiff's Attorneys (or someone in their office) because he was unhappy that his deposition in Plaintiff's case was to be

---

[2] The ABA Model Rules have a similar rule that extends the prohibition to the constituents of an organization that "has authority to obligate the organization with respect to the matter" or whose actions "may be imputed to the organization for purposes of civil or criminal liability." MODEL RULES OF PROF'L CONDUCT r. 4.2 cmt. 7.

6

held in Dallas (*Id*. at 12:16-22); and (5) the only thing he could remember discussing with Plaintiff's Attorneys about Plaintiff's case was that Plaintiff was "a nice guy" and "a good employee" and that he was sorry that Plaintiff got hurt (*Id*. at 13:20-25). The Court finds nothing in Blackwell's testimony that amounts to the "admission" claimed by the City.

Second, the City asserts that Blackwell, in his own EEOC complaint (the "EEOC Complaint") (Dkt. 104-7) filed in March 2017, alleges that Blackwell had been cooperating with Plaintiff's Attorneys in a different case brought against the City by clients of Plaintiff's Attorneys. *See* Dkt. 104 at 3. Most of the statements in Blackwell's EEOC Complaint (Dkt. 104-7) concern Blackwell's involvement (or lack thereof) in the discharge of the City's former Chief of Police, Otis Henry ("Henry"), Blackwell's objection to Henry's discharge, and the fact that Blackwell believed he was being discriminated against, and the City was retaliating against him for objecting to Henry's discharge. *See id*. Thus, it appears to the Court that any statement Blackwell made in the EEOC Complaint about cooperating with Henry's attorneys is directly related to Blackwell's own claims against the City, which Blackwell attributes, at least in part, to the circumstances of Henry's discharge. Furthermore, the City does not elaborate about how Blackwell's cooperation in the Henry case implicates the present case and provides no evidence that Blackwell shared any confidential information with Plaintiff's Attorneys about the present case.

Third, the City brings as evidence an email chain regarding "Human Resources Security Measures" that Blackwell forwarded to Plaintiff's Attorneys. *See* Dkts. 104 at 3; 104-6. However, based on the text of Blackwell's accompanying message, he forwarded the email to Plaintiff's Attorneys in the context of his own dispute with the City—not Plaintiff's lawsuit. *See id*. Further, the email is about Blackwell's access to personnel information and his job responsibilities and does not contain any information regarding the present case.

Finally, the Court addresses the City's allegations that Blackwell had: (1) "recently engaged in the deletion of City information and emails;" (2) "been observed shredding unidentified docments without being instructed to do so;" and (3) forwarded privileged communications to his personal email address. *See* Dkt. 104 at 1-2, 11-12. These allegations are so vague and unsupported as to require no in-depth analysis. Any information that Blackwell was observed destroying or shredding does not establish that any confidential information was given to Plaintiff's Attorneys. And even if Blackwell did destroy or shred confidential information, the City fails to explain how such destroyed information could have then been shared with Plaintiff's Attorneys. As to the fact that Blackwell forwarded an email regarding another case to his personal email account, there is no evidence that Blackwell forwarded that email from his personal account to Plaintiff's Attorneys. Accordingly, there is no evidence that Blackwell sent any of this information to Plaintiff's Attorneys.

Based on the foregoing, the evidence before the Court does not demonstrate that Blackwell spoke with Plaintiff's Attorneys about the subject matter of the suit or shared confidential information about Plaintiff's case with Plaintiff's Attorneys.

Even if the City had presented evidence to suggest an improper communication occurred between Plaintiff's Attorneys and Blackwell—and it has not—the severe remedy of disqualification requires more. The City must show that it suffered actual prejudice from any alleged violation. *See In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998) ("[A] court should not disqualify a lawyer for a disciplinary violation that has not resulted in actual prejudice to the party seeking disqualification."). The City has not met its burden of showing actual prejudice. *See In re Meador*, 968 S.W.2d at 350; *Orchestratehr, Inc. v. Trombetta*, 2016 WL 4563348, at *14 (N.D. Tex. 2016).

### B. APPEARANCE OF IMPROPRIETY

The City argues that "[a] court must disqualify a lawyer for appearance of impropriety when there is a **reasonable possibility** that some specifically identifiable impropriety has occurred and the likelihood of public suspicion of the impropriety is sufficiently strong enough to outweigh the interest of the party being represented by counsel of its choice." Dkt. 104 at 8 (emphasis in original) (citing *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1265 (5th Cir. 1983)). The City contends that Plaintiff's Attorneys' representation of Blackwell gives them an excuse to have *ex parte* communication with Blackwell, and because Blackwell worked in the Human Resources Department he had "unique access" to confidential information regarding the present case, which then gives Plaintiff's Attorneys access to confidential City information. *Id*. at 8.

Plaintiff responds there is no appearance of impropriety because Blackwell does not currently have, and never had, confidential information regarding this case. *See generally* Dkt. 105. Plaintiff maintains that even if there was an appearance of impropriety, the City would still have to show prejudice, which it has failed to do. *See id*.

"Canon 9 of the Code of Professional Responsibility provides: 'A Lawyer Should Avoid Even the Appearance of Professional Impropriety.'" *McCuin*, 714 F.2d at 1265. Because this is a canon of professional responsibility, it is not a mandate, but an attorney may still be disqualified on this principle if it violates the prescription. *Id*. In order to determine if an attorney's conduct gives the appearance of impropriety, the court should engage in a two-step inquiry. *Id*. "First, the district court should inquire whether there is 'at least a reasonable possibility that some specifically identifiable impropriety' has occurred." *Id*. (citing *Woods*, 537 F.2d at 813). "Second, the court should consider whether the likelihood of public suspicion of, or obloquy regarding, such an impropriety is sufficiently strong to outweigh the interest of the party being represented by counsel

9

of its choice." *Id*. (citing *Woods*, 537 F.2d at 813). Furthermore, safeguarding popular confidence in the integrity of the legal system and ensuring a party is not denied the counsel of its choosing are equally fundamental. *See F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304 (5th Cir. 1995).

The Court has already determined there is no improper *ex parte* communication and no evidence that Blackwell shared any confidential information with Plaintiff's Attorneys. As such, this allegation does not serve as a basis for the proposition that any impropriety has occurred. The other basis the City asserts creates the appearance of impropriety is dual representation. The City maintains there does not need to be proof of actual confidential information disclosed because a presumption of impropriety can exist with dual representation. *See* Dkt. 104 at 10 (citing *Hull v. Celanese*, 513 F.2d 568, 572 (2d Cir. 1975)).

The City asserts the mere fact of Plaintiff's Attorneys' representation of Blackwell produces this presumption of impropriety because Blackwell was privy to discussions regarding the subject matter of the case and was in a key position during the time at issue in the suit. Additionally, the City contends the dual representation, coupled with Blackwell's "suspicious behavior,"[3] makes such access more likely. *See* Dkt. 104 at 5. Plaintiff responds this is not a case that warrants a presumption of impropriety because Blackwell is merely a fact witness in this case, not an attorney, did not possess any privileged information, and did not provide Plaintiff's Attorneys any confidential information about the subject matter of the case. *See* Dkt. 105 at 11-12.

The Court finds the City's reliance on *Hull*, 513 F.2d 568, to be misplaced. The facts in *Hull* are distinguishable from the present case. In *Hull*, the Second Circuit disqualified a law firm that sued a corporation for a Title VII violation when that corporation's in-house counsel, who

---

[3] The City's assertions of "suspicious behavior" on the part of Blackwell are not borne out by the record; thus, the Court finds the assertion speculative at best, and declines to give the assertion much weight in its analysis.

initially worked on the Title VII case, intervened in the lawsuit. *See Hull*, 513 F.2d at 569–70. The Court determined that because it was reasonable that the in-house counsel acquired information on the subject matter of the suit, the representation, on its own without any evidence that confidential information was actually shared, was enough to create the appearance of impropriety. *Id*. at 571–72. However, the same presumption does not apply to a fact witness who is not part of a litigant's legal team. *See RSR Corp.*, 473 S.W.3d at 781.

The City argues that because Blackwell had access to confidential and privileged information merely by virtue of his position as Human Resources Director, the presumption should apply. However, the Court is not persuaded that Blackwell is anything more than a fact witness with first-hand knowledge of the facts underlying the April 2015 Letter. The City has not presented any evidence that Blackwell possesses any privileged information beneficial to Plaintiff's Attorneys in the present case. *See Hull*, 513 F.2d at 571-572; *see also Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1366 (5th Cir. 2010).

As the Texas Supreme Court noted, the presumptions which are appropriate for lawyers and legal staff are not appropriate for those "not hired for legal purposes and [ ] not directly supervised by lawyers," which is the case here. *See id*. at 782. Based on the foregoing, the Court does not find a reasonable possibility that any specifically identifiable impropriety has occurred here. *See McCuin*, 714 F.2d at 1265 (citing *Woods*, 537 F.2d at 813). Accordingly, the Court finds there is no appearance of impropriety, and hence, the Court need not move to the second step of the analysis.[4]

---

[4] The Court notes other than citing the standard, the City makes no specific arguments regarding the second step of the analysis. *See* Dkt. 104.

## IV. CONCLUSION

Based on the foregoing, the Court finds the City has not established sufficient legal basis to disqualify Plaintiff's Attorneys, and the Motion to Disqualify Plaintiff's Attorneys (Dkt. 104) is **DENIED**. This case shall proceed to trial as scheduled on February 5, 2018.

**IT IS SO ORDERED**.

**SIGNED this 30th day of January, 2018.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE